UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN P. OTIS** | * | CIVIL ACTION NO.: 2:22-cv-00642 |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| **CITY OF NEW ORLEANS and KYSHUN WEBSTER, SR. IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE DEPARTMENT OF HUMAN SERVICES- JUVENILE JUSTICE INTERVENTION CENTER,** Defendants | * | JUDGE: |
| | * | |
| | * | |
| | * | |
| | * | MAGISTRATE JUDGE: |
| | * | |
| | * | |
| ****************************************** | * | ********************************* |

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff JOHN P. OTIS ("Otis"), who hereby brings this Complaint and respectfully avers, as follows:

### INTRODUCTION

1. Otis brings this action under the Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203A and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. and Louisiana law prohibiting retaliation for asserting a claim for worker's compensation under La. R.S. 23:1361 and intentional discrimination based on disability and retaliation under the Louisiana Employment Discrimination Law codified as LA R.S. 23:332 et seq and La. R.S. 51:2256.

### JURISTICTION AND VENUE

2. This action is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12117(a), which incorporates by reference, plaintiff's Title VII of the Civil Rights Act of 196442 U.S.C. §

        2000e-5(f)(1) and (3).

3. The employment practices alleged to be unlawful were committed in the State of Louisiana, and therefore, fall within the jurisdiction and venue of the United States District Court for the Eastern District of Louisiana pursuant to Title VII, 423 U.S.C. §2000e-5(f)(3).

4. Supplemental jurisdiction over Complainant's state law claims is invoked under both Rule 18 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367, because they are part of the same case or controversy as Complainant's federal claims.

5. This Court has personal jurisdiction over the Defendants- as each defendant is either domiciled in the Eastern District of Louisiana and the acts and omissions of all defendants occurred in the Eastern District of Louisiana.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims asserted occurred in the Eastern District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Complainant has satisfied all administrative prerequisites for filing suit under ADA.

8. On or about November 1, 2021, Otis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On December 13, 2021, Otis received the Notice of Right to Sue letter from the EEOC for his, ADA and retaliation claims included in his Charge of Discrimination.

9. This Complaint is being filed within 90 days of Complainant's receipt of the Notice of Right to Sue.

## THE PARTIES

10. Plaintiff, John P. Otis, is a person of majority and resident of Orleans Parish, Otis was employed by the City of New Orleans through the Department of Human Services-Juvenile

Justice Intervention Center ("JJIC") as a Security Systems Manager, from April 5, 2021 through July 21, 2021.

11. Defendant, CITY OF NEW ORLEANS ("CNO"), is a political subdivision of the State of Louisiana and a municipal corporation. It was at all relevant times the operator of the JJIC and Otis's employer.

12. Defendant Kyshun Webster, Sr., in his official capacity as the Executive Director of Department of Human Services-Juvenile Justice Intervention Center, as the chief executive in charge of the Department including all employment matters and Otis's supervisor.

13. Each of the acts and omissions complained of in this Complaint were committed by the defendants and agents while in the course and scope of their employment with the Parish.

14. In doing the acts and/or omissions alleged, Defendants acted under color of authority and/or color of state law.

## FACTUAL ALLEGATIONS

15. Plaintiff began his employment on or about April 5, 2021, as a Security Systems Manager, and acted as an administrator and deputy chief. Plaintiff oversaw security and directly supervised Juvenile Detentions Corrections (JDC) Officers, who served as security guards for the juvenile residents. Plaintiff directly reported to Chief Lee Doss, who reported to the Executive Director Kyshun Webster, Sr.

16. Although Otis was told he would be provided training for the position, he was placed on post almost immediately without proper training. He was charged with supervising the JDC officers, but Webster and CNO failed to provide any guidance or forms for issuing write ups for policy infractions.

17. It was evident early on that Chief Doss did not uniformly enforce policies and procedures.

Instead, he regularly ignored or refused to issue discipline for safety infractions that Otis reported. Doss repeatedly undermined Plaintiff's authority and his actions resulted in the security guards adopting a general lack of respect toward Plaintiff, who repeatedly ignored his authority. When Plaintiff brought issues to the attention of the Executive Director, Mr. Webster, his requests for assistance were ignored and the retaliation from Chief Doss intensified.

18. On or about June 10, 2021, Otis was injured at work, during an attempted escape from the juvenile facility. During the altercation, Otis was able to stop the juveniles that were trying to escape but the other guards failed to assist. During the incident, Otis was able to apprehend one of the juveniles; the other JDC officers did not try to apprehend the other juvenile, who was able to get a police radio that he threw at Otis. The radio struck Otis's head and caused a concussion, requiring twenty-one stitches. Despite suffering from headaches and a concussion, Otis was discouraged from taking time off work to recover or file a claim for worker's compensation. Otis was told that he would be fired if he tried to take time off or file a workers' compensation claim.

19. After NOPD issued a report for Otis's injury, he was told by Chief Doss that he could not take time off work because there were other employees on vacation. Otis was required to work twenty-one days straight after the incident while suffering from his workplace injuries. After Plaintiff inquired with Chief Doss about taking time off to recover from his injury, Chief Doss intensified his retaliation toward Otis.

20. After suffering his on-the-job injury, Otis was required to take physical training. He requested an accommodation due to his injuries from the work-related injury. His request was refused, and he was required to undergo the physical training while injured.

21. On or about July 5, 2021, Otis discovered one of his subordinates, JDC Officers, J. Raymond, asleep on duty. Otis reported the issue as instructed to both Director Webster and Chief Doss. After he notified his superiors about the issue, Director Webster notified Residential Life Superintendent, Ms. Dichelle Williams, who oversaw the JDC Officers. Ms. Williams's title is superior in hierarchy to Otis; however, she was not his supervisor. Ms. Williams called Otis, upset that he reported the issue to Director Webster instead of just waking up Mr. Raymond.

22. During his interview process, Otis met with Ms. Williams, who asked him directly if he would be afraid to make a decision and write up employees who did not follow policy and instructions. Otis advised that, as a former Jefferson Parish Sheriff's Deputy, he was accustomed to making decisions and would write up employees who failed to follow directives and policy.

23. The retaliation then intensified against Otis; however, Mr. Raymond was never disciplined. After Otis reported the issue about J. Raymond sleeping at work, he was told that Ms. Williams was romantically involved with Mr. J. Raymond.

24. Otis was required to take time off work in July to undergo gallbladder surgery. He made a request for two (2) weeks of sick leave, which was approved.

25. On or about Sunday, July 18, 2021, while out on leave, Chief Doss called Otis wanting him to handle an issue with security vendor, Pinnacle. Pinnacle provided security to JJIC, and their guard was required to be relieved of duty due to having been on duty for sixteen hours already. Chief Doss wanted Otis to call Pinnacle to get them to send more security to the facility. When Otis advised that he was out on leave, Chief Doss became angry and hung up on Otis.

26. The very next day, on or about Monday July 19, 2021, Plaintiff underwent gallbladder surgery. After he got out of surgery he had an email waiting in his inbox notifying him of his termination.

27. The letter indicated that Otis was terminated pursuant to Civil Service Rule 1.1 for being unable or unwilling to perform the duties of his position.

28. The letter stated that on Friday, July 16, 2021, Residential Life Superintendent, Dichelle Williams, was notified by A.P.E., JJIC uniform vendor, that Otis ordered and paid for JJIC uniforms without receiving authorization from JJIC Administration and that because he ordered a uniform that he paid for with his own funds he failed his probation period.

29. The letter was never received via certified mail, as required under civil service policy and only through email.

30. Otis called Director Webster after he reviewed the letter to explain that he never ordered any uniforms without permission. Otis left a message that was ignored and never returned by Director Webster.

31. When Otis was initially hired, he was instructed to purchase two (2) pairs of black pants and two (2) white shirts from the uniform vendor. Otis contacted the vendor and purchased the items. When Otis was attacked on June 10, 2021, his clothing was ruined from his blood stains and he was told to order two (2) pairs of blue pants and two (2) more white shirts, which he did.

32. At some point after the June incident, when Otis was in the HR Manager's office, Debra Calderon, he asked her if he could order a uniform with the JJIC logo and his name. Ms. Calderon said she was going to check if it was approved by Director Webster. She checked something in her computer and then told Plaintiff that he could order the uniforms. Otis

contacted the vendor who advised that they did not have an order for him. Plaintiff told the vendor to hold off until he got approval and did not purchase any uniforms.

33. Otis previously paid $540.00 for the other pants and shirts, which was never reimbursed by his employer. The next time that Otis heard anything related to a uniform was when he received his termination letter while out on approved sick leave.

34. On or about July 28, 2021, Otis was contacted by Human Resources Manager, Debra Calderon, instructing him to return any employer property and that his last paycheck would be withheld until the property was returned. Otis responded, advising that he was still under doctor care for his surgery. Otis further advised that he was still suffering from headaches from his work-related injury and was feeling "really bad." Otis also reminded Ms. Calderon of the conversation he had with her while in her office when he asked her about uniforms when she said he was approved.

35. When Otis inquired about filing a workers' compensation claim, he was advised that they did not have enough staff to give him leave and he would likely be terminated for filing a claim.

36. Otis was retaliated against for seeking workers compensation benefits for his on-the-job injury.

37. Otis was required to take time off when he had to undergo gallbladder surgery and was terminated while on approved leave.

38. Otis was also discriminated against related to his disability from the work injury and retaliated against for requesting an accommodation.

39. Some examples of additional retaliatory and discriminatory actions taken against Otis include, but are not limited to:

- Otis was told that the JDC Officers were not allowed to have cell phones on them, but when Otis reported the behavior to Chief Doss, Chief Doss ignored the issue and refused to issue any type of warning or discipline.

- As an Administrator, Otis was supposed to be allowed to leave the facility for an hour lunch. Chief Doss would not allow Otis to leave the premises or take a lunch; instead, Otis was required to work through lunch and eat at his desk.

- Otis was initially instructed by Dr. Webster and Chief Doss that if he found any employee asleep on the job, he was required to notify both Webster and Doss and issue a report. Sleeping on duty as a JDC officer was a serious safety violation that warranted immediate termination. However, when Otis reported this behavior, Chief Doss refused to issue discipline to the guard.

- While still suffering and complaining of pain, headaches, and a concussion from the work-place injury, Chief Doss required Otis to undergo physical training, which included running, jumping and other strenuous activity. Chief Doss told Otis that he would be fired if he did not do the physical training.

- Otis was contacted by Doss to perform work while out on approved leave for his surgery.

- Otis was terminated while out on leave recovering from his surgery.

- Otis was told that the reason he was fired was for ordering uniforms he was not allowed to order.

## CLAIM ONE
## VIOLATION OF ADA
## Title I, 42 U.S.C. § 12111, et al.

40.  Otis adopts and incorporates the allegations of paragraphs 1-39 as if restated herein *in*

*extenso*.

41. Otis is an individual with a disability under the ADA. Defendants were aware of Otis's disability, including a concussion, headaches and confusion from the work injury as well as time off for his gallbladder surgery, and Defendants failed to engage in an interactive process with Otis to determine what reasonable accommodation was available to allow Otis to perform the essential functions of his job.

42. Instead of providing Plaintiff with a reasonable accommodation, Defendants terminated him in violation of the ADA.

## CLAIM TWO
### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation

43. Otis adopts and incorporates the allegations of paragraphs 1-39 as if restated herein *in extenso*.

44. Otis engaged in protected activity, by opposing the disparate treatment and discrimination as describe in preceding paragraphs.

45. Defendants CNO and Webster, retaliated against Otis by engaging in a series of materially adverse actions against her that would have dissuaded a reasonable person from complaining of discrimination.

46. Defendants took the adverse actions against Otis because of his protected activities.

47. Defendants' actions were taken with malice and reckless disregard for Otis's right be free from discrimination and retaliation in the workplace.

## CLAIM THREE
### Retaliation
### La. R.S. § 23:1361

48. Otis adopts and incorporates the allegations of paragraphs 1-39 as if restated herein *in*

*extenso*.

49. La. R.S. 23:1361(b) mandates that a "[n]o person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States.

50. Section (c) provides that any person who was discharged from employment in violation of the statutes shall be entitled to damages including a civil penalty equivalent to the amount the employee would have earned but for the discrimination, with reasonable attorney fees and court costs.

51. Otis was injured during an attempted escape by several juvenile residents. After he was injured, Otis requested time off to recover and requested to file a workers compensation claim.

52. Otis was illegally discouraged from filing a workers compensation claim and was advised that if he took time off work for his injury or filed a claim he would be terminated.

53. While out on leave for gallbladder surgery, Otis was terminated for being unable or unwilling to perform the duties of his position.

54. Otis's termination was in retaliation for taking time off to recover and for asserting a claim for workers compensation.

55. Accordingly, Petitioner prays that this Court find that Defendant, the City of New Orleans, and Kyshun Webster, as Executive Director of the Department of Human Services, Juvenile Justice Intervention Center, be found liable for the retaliation committed against him.

56. Plaintiff demands a Jury on all issues so triable.

## CLAIM FOUR
### State Law Discrimination based on Retaliation and Disability
### La. R.S. §23:3301 et seq.

57. Otis adopts and incorporates the allegations of paragraphs 1-39 as if restated herein i*n extenso*.

58. Defendants are liable to Otis under the Louisiana Employment Discrimination Law, La. R.S. §23:3301 et. seq. for retaliation, and discrimination based on disability as alleged in the preceding paragraphs.

## CLAIM FIVE
### Conspiracy to Violate Human Rights
### La. R.S. 51:2256

59. Otis realleges and incorporates herein by reference all of the foregoing allegations.

60. Louisiana law establishes that it is an unlawful practice for an employer as defined in R.S. 23:302 to conspire:

(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

(2) To aid, abet, incite, compel, or coerce a person to engage in any of the acts or practices declared unlawful by this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

(3) To obstruct or prevent a person from complying with the provisions of this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950 or any order issued thereunder.

(4) To resist, prevent, impede, or interfere with the commission, or any of its members or representatives, in the lawful performance of duty under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.

61. CNO employees Dichelle Williams, Kyshan Webster, and Debra Calderon conspired to retaliate against Otis after opposing discriminatory practices, requesting an accommodation for his disability and retaliated against Otis.

62. Defendant CNO is liable to Otis for the conspirator acts of its employees.

## PRAYER FOR RELIEF

WHEREFORE, after due proceedings are had, Otis prays that this Complaint be deemed good and sufficient; and that this Court assume jurisdiction of this action and after trial:

i. Grant Otis compensatory damages for:

1. Mental Anguish, Anxiety, and Emotional Distress;

2. Back Pay, Loss of Future Earnings, and Loss of Earnings Capacity;

3. Loss of Benefits;

ii. Award Otis such other relief and benefits as the cause of justice may require, but not limited to, an award of costs and attorney's fees.

iii. For any and all other just and equitable relief to which Otis may be entitled whether or not pled herein.

Respectfully submitted,

*/s/ Stephanie Dovalina*
**STEPHANIE DOVALINA, LSB #31137**
700 Camp St., Ste. 105
New Orleans, Louisiana 70130
TELEPHONE: (504) 528-9500 ext. 105
FACSIMILE: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Plaintiff, John Otis